PEOPLE ex rel. CRANE v. AHEARN, Borough President.

(Supreme Court, Appellate Division, First Department.  May 8, 1908.)

MUNICIPAL CORPORATIONS—OFFICERS—CITY SURVEYOR—COMPENSATION.

Revised Ordinances of 1880 of the Mayor, Aldermen, and Commonalty of the City of New York, § 113, in force on April 21, 1903, under the direct provisions of Laws 1901, c. 466, p. 22, § 42, provides for the appointment of an indefinite number of city surveyors to assist the commissioner of public works, etc., in laying out and regulating streets and roads.  Section 114 provides that they shall take an oath before they take office.  Relator was appointed a city surveyor April 7, 1903, and took the oath April 27th.  The Code of Ordinances of the City of New York was adopted November 8, 1906.  Section 276 of article 11, relating to surveyors, authorizes the president of any borough to employ a city surveyor in laying out streets where needed.  Section 277 provides that the city surveyor so employed shall receive certain specified compensation for making necessary surveys and furnishing necessary copies of damage maps in street-opening proceedings.  Section 278 provides that he shall receive payment for all services on completion and acceptance of the work.  On December 4, 1906, the above ordinance being then in force, relator was assigned to a job of work.  December 10, 1907, the aldermen amended section 277, increasing the compensation of the surveyor.  *Held* that, though relator as a city surveyor was perhaps not an officer, strictly speaking, yet, inasmuch as he was appointed and required to take an oath of office and became by virtue thereof eligible to certain employment in the nature of public service for which he was entitled to receive compensation at specified rates for services performed, fixed by the local law and assessed upon the property, the amount of his compensation depended upon the law at the time his services were rendered, and not upon the law at the time of his appointment; and hence relator was entitled to the additional compensation for the extra copies.

Appeal from Special Term.

Mandamus by the people, on the relation of C. Austin Crane, to compel John F. Ahearn, as president of the borough of Manhattan, city of New York, to certify the relator's bill against the city.  From an order denying the writ, relator appeals.  Reversed, and application granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Mellen & Woodbridge (Chase Mellen, of counsel), for appellant.

Francis K. Pendleton, Corp. Counsel (Charles A. O'Neil, of counsel, and Theodore Connoly, on the brief), for respondent.

CLARKE, J.  The petition alleges, and there is no dispute of fact: That by the Revised Ordinances of 1880 of the Mayor, Aldermen, and Commonalty of the City of New York, which, in accordance with the provisions of section 42 of the revised charter (chapter 466, p. 22, Laws 1901), were in force on the 21st day of April, 1903, it was provided as follows:

Section 113:

"There shall be so many surveyors appointed in this city as the common council shall from time to time think proper, whose duty it shall be to assist the commissioner of public works, commissioners of the department of parks, and the commissioner of street improvements in the 23rd and 24th wards in laying out and regulating all the streets and roads of the said city; and to

lay out and survey all ground for the purpose of building upon and to advise and direct concerning the same."

Section 114:

"The said surveyors so to be appointed, before they respectively enter upon the execution of sr'd office, shall take an oath well and truly to execute the same."

On the 7th of April, 1903, the board of aldermen adopted the folloving resolution:

"Resolved, that C. Austin Crane of 121 West 70th street, borough of Manhattan, be and he hereby is appointed a city surveyor."

That said Crane took the oath of office on April 27, 1903. That the Code of Ordinances of the City of New York was adopted on the 8th of November, 1906. That article 11 thereof is headed "Surveyors." Section 274 provides for the appointment of as many surveyors as the board of aldermen shall from time to time think proper. Section 275 provides that they shall take the oath of office. Section 276:

"Whenever, in the proper administration of the duties of his office, the president of any borough in this city may require the services of a city surveyor in laying out and regulating streets and roads in said city, * * * he shall have the authority to employ such one of the city surveyors as he may designate for the purpose."

Section 277:

"The city surveyors employed by any borough president shall receive compensation therefor as follows: * * * Nor shall any surveyor's bill be paid unless the same be first certified by the borough president so employing him."

Then follow various provisions for payment for various services at specified rates; the one in question being as follows:

"For making the necessary surveys and furnishing all necessary copies of damage maps in street opening proceedings, three cents per foot, * * * and for assessments, lists and maps for street opening or other improvements, three cents per linear foot of map front, it being understood that the surveyor shall in every case furnish quadruple lists and maps without additional charge. A surveyor employed by either of said borough presidents to make a survey, the compensation for which is not otherwise provided, shall receive such compensation as shall be certified by the borough president so employing him."

Section 278:                                              a

" * * * He shall receive payment for all services on the completion of the work and its acceptance by the borough president."

Section 279:

"The amount paid for any of the services mentioned above, whenever the same shall be rendered in relation to any improvement or work for which an assessment may afterward be made, shall be included in such assessment."

On December 4, 1906, the above ordinances being then in force, the petitioner received a notice from the borough president, dated December 3d:

"You are hereby appointed city surveyor upon the following works: * * * Regulating, grading, curbing and flagging 211th street, from 10th avenue to the bulkhead line of the Harlem river. * * * You will report to George R. Olney, chief engineer of highways, from whom you will receive the necessary instructions for your guidance."

On May 21, 1907, he received from Chief Engineer Olney the following:

"* * * Mr. D. W. Moran, contractor for regulating, grading, etc., 211th street, from 10th avenue to bulkhead of Harlem river, has been notified to commence work on May 22, 1907. You will please furnish him with the necessary grade lines, etc., also make an examination and certify to this bureau if there will be any alterations in the total amount of the work to be done caused by excavation or filling on the line of the work since the making of the preliminary survey."

Thereafter the said work proceeded. On December 30, 1907, the chief engineer wrote to relator:

"The contractor has reported the work of regulating and grading 211th street, * * * as completed. You will please examine the same and report to me in writing that the work is done according to contract."

This was received on December 31st. Between the 3d and 13th days of January, 1908, relator proceeded to and did make the final certificate for payment for said Moran, contractor, on said work, and on or about the 21st day of January, 1908, said work was accepted by defendant as completed to his satisfaction, and said contractor was or will be paid in accordance with said final certificate. On or about the 13th day of January, 1908, relator proceeded to and did make an assessment list and map of said work and three additional copies thereof as required by said borough president. That, after making and delivering said final certificate, assessment list, and map and additional copies thereof, he presented his bill to defendant for compensation for his services as city surveyor upon said work, which bill included a charge of three cents per linear foot of map front for said assessment list and map, and of two cents per linear foot of map front for each of said three additional copies of said list and map, and demanded that defendant certify the same. That the measurements of said map fronts as stated in said bill were in all respects true and correct.

On the 10th day of December, 1907, the aldermen amended sections 277 and 280 of the ordinances; said amendment taking effect December 31, 1907. The amendment affecting the matter at bar is as follows: "And for assessment lists and maps for street opening or other improvements, three cents per linear foot of map front"—that being the same as in the ordinance before amendment. But, instead of the old provision, to wit, "It being understood that the surveyor shall in every case furnish quadruple lists and maps without additional charge," the new ordinance provided, "And for every additional copy and list required, two cents per linear foot of map front."

The petition proceeds: That the defendant has wrongfully and unlawfully refused to certify said bill as aforesaid, on the ground that plaintiff is entitled to compensation for his services in making said assessment list and maps and copies thereof in accordance with the compensation or fees prescribed in sections 270 and 280 of the Code of Ordinances of the City of New York, as in force December 3, 1906, the date of the letter of employment on the 211th street job, and not as amended December 31, 1907. "Your relator contends that as a public officer, to wit, a city surveyor appointed as such by the board

of aldermen, by virtue of said ordinance said board of aldermen had the right to change your relator's compensation, either to diminish or increase the same, at any time while relator remained a city surveyor by virtue of such appointment, the same being an incident of said office and not depending on contract, and accordingly that your relator became and was entitled for all services performed by him as city surveyor subsequent to December 31, 1907, to the compensation and fees fixed and prescribed therefor by the Code of Ordinances of said city as amended December 31, 1907"; and therefore he asked a writ to compel the borough president to certify his bill.

The learned court at Special Term held that the relator was not a public officer, and denied the application. It cited as authority Wardlaw v. Mayor (Super. Ct.) 19 N. Y. Supp. 6. That case was reversed in 137 N. Y. 194, 33 N. E. 140. The question in that case arose in a peculiar way. Wardlaw had been an assistant engineer, and had been suspended. Subsequently he was employed as a city surveyor, and had received a large sum therefor. He brought suit to recover his salary as assistant engineer from the date of his suspension, July 31, 1886, to the date of his discharge, January 30, 1890. One of the defenses contained in the answer was that Wardlaw was, in fact, discharged on the 31st day of July, 1886, and that he acquiesced in the discharge, and accepted other and different employment from the defendant. The superior court held that a city surveyor was not an officer; McAdam, J., saying:

"The position of city surveyor has no tenure or salary. It does not exist independently of the incumbent, and does not become vacant by his death, removal or resignation. It resembles that of licensee more than anything else. * * * The decedent, by reason of his position of city surveyor, was in no sense a clerk, city employé, or public official, and did not come within the purpose and intent of the prohibition contained in section 55, supra."

The plaintiff recovered judgment.

In the Court of Appeals the city strenuously urged that a city surveyor was an officer. On the other hand, the respondent as strenuously urged that the city surveyorship was not a public office, for the reason that there was no authority in law for the creation of such an office. The Court of Appeals said:

"It appears from the record that between July 31, 1886, and January 30, 1890, the period during which it is claimed that the plaintiff's intestate was holding the office of assistant engineer and entitled to the salary attached to it, though actually performing no duty of that office, he was in the service of the city, under the direction of the commissioner of public works, in another capacity. He was performing the duties of surveyor in laying out, regulating, and grading streets, and possibly in other respects when his services were required. It is stated by the learned counsel for the defendant that he received during the period when it is claimed he was suspended a sum of money considerably in excess of what he would have been entitled to during the same time at the salary of an assistant engineer. This is denied by the learned counsel for the plaintiff, who insists that a large part of the money paid to his client for this work was used to defray the expenses of performing it, and that the net sum received was comparatively small. There is proof in the case that after the letter of July 23, 1886, Wardlaw was employed as a surveyor in the capacity above mentioned by the commissioner, that he accepted such employment, and was paid a large sum of money therefor. Whether more or less than he would have received as assistant en-

gineer it is, perhaps, impossible upon the record to say, as the expenses, if any, were not shown or deducted from the gross receipts in order to show the net income from such employment. That question was not tried. One of the defenses contained in the answer is that Wardlaw was, in fact, discharged of the 31st of July, 1886, and that he acquiesced in such discharge, and accepted other and different employment from the defendant. At the close of the case, the defendant's counsel asked to go to the jury upon the question whether the acceptance of such employment from the city, though in another capacity, and the receipt of the compensation therefor during the period for which salary was claimed, was not an abandonment of the office of assistant engineer and a relinquishment of the salary thereof for the other employment. The court refused this request, and defendant's counsel excepted. * * * When he accepts other employment from the appointing or removing power at larger compensation, the inference that there was an intention on his part to abandon the first position would seem to be strong, but, even though the compensation in the new position be less, it might still be a question of fact whether he intended to abandon a position from which he could at any time be removed for another that promised more permanent employment, or at least was quite as certain in its tenure or duration. The defendant was deprived by the ruling of the learned trial judge of the right of submitting the facts and circumstances in the case bearing upon this point for the opinion of the jury. * * * If Wardlaw's subsequent conduct and relations with the city or its officers were such as to justify fairly the conclusion that he had accepted the new employment in place of the old, it might serve to interpret the letter in an inquiry as to whether it was intended and understood on both sides as a dismissal."

So that this case in the Court of Appeals did not expressly determine whether or not a city surveyor was an officer. Judge O'Brien uses throughout the opinion the expression "employment." Whether an office or an employment, the result reached is consistent with the conclusion of the abandonment of the admitted office of assistant engineer. That office carried a salary, and for that salary the city was entitled to all of the officer's time. No officer receiving a salary can assume an additional contractual relation with the city by which he is entitled to receive compensation for the same reason that he cannot hold two offices with two separate salaries. It was the acceptance of the employment and the receipt of compensation therefor inconsistent with the claim of continuance in office as assistant engineer which had force and was under consideration, rather than whether he held two inconsistent offices at the same time.

I incline to the conclusion that while the position of city surveyor is not, perhaps, strictly speaking, an office, for it certainly does not carry a salary, yet inasmuch as the surveyor is appointed and is required to take an oath of office, and because by virtue of his appointment under the authority of law and the taking of such oath eligible to certain employment in the nature of public service, for which he is entitled to receive compensation at specified rates for services performed, fixed by the local law, which compensation, in turn, is to be assessed upon the property, the amount of that compensation depends upon the law at the time the service is rendered. The rate of compensation of a commissioner in street-opening proceedings is fixed by law, and the amount thereof is assessed against the property. If during his incumbency the Legislature should change the amount of daily compensation of such commissioner, as it has in the past, there can be no doubt of the right to the increased compensation after the

change of the law. It was expressly so held by this court as to a reduction of such compensation in the Matter of Mayor, 33 App. Div. 365, 53 N. Y. Supp. 875, affirmed 158 N. Y. 668, 52 N. E. 1125, Judge O'Brien said:

"The right to compensation accrues from services performed, and not from the nature or tenure of the office, and, as we have already observed, the compensation of statutory officers not specially protected by the Constitution may be increased or decreased by the Legislature. It was therefore perfectly competent for the Legislature to reduce the salary of these officials. The right to salary vested only as it accrued, and the fact that the proceeding was commenced before the new law went into effect is immaterial."

So, in regard to a referee, the amount chargeable for his services is fixed by law. The surveyor, the commissioner, and the referee has each taken a particular oath to perform a particular duty to the best of his ability, and the amount of his charges are fixed by law. When the law is changed, the compensation for services thereafter rendered follow the law, unless an intention to the contrary is clearly expressed. These rates of compensation are not subject to agreement. The city could not agree to pay to the city surveyor a larger sum for the specific work pointed out, limited, and controlled by the ordinance than the amounts fixed in the ordinance, and charge such sum over against the property. This view is strengthened by the following provision of section 277 of the ordinances:

"A surveyor employed by one of the borough presidents to make a survey, the compensation for which is not otherwise provided, shall receive such compensation as shall be agreed upon in writing between the surveyor and said borough president before the survey or work be undertaken, and after the completion of said survey or work the surveyor's bill shall be certified by the borough president in accordance with the terms of such agreement."

But for the particular services under consideration, in the case at bar, the compensation was otherwise provided, to wit, by specific provisions of the ordinance. As bearing upon the consideration of a rate of compensation fixed by law, even in cases where it is conceded that the relation is purely contractual, I may refer to Buckbee v. Board of Education, 115 App. Div. 366, 100 N. Y. Supp. 943, affirmed upon the opinion of this court, 187 N. Y. 544, 80 N. E. 1106. In that case we had under consideration the reduction of a teacher's salary after it had been once fixed, and she had received for a time the amount so fixed. The status of a school-teacher in his relation to the board of education had been determined in a number of cases by the Court of Appeals which had said that the teacher was not an officer but an employé, and that his employment was contractual. Upon that the plaintiff in the Buckbee Case claimed that, her employment being contractual, her salary once fixed could not be reduced without her consent. We said:

"We may concede that she is an employé, and that her relation is contractual, but the question still remains: What is the contract?"

We proceeded to read into the contract the provisions of law which gave the power to the board of education to change the amount of her compensation.

It seems to me to follow from the foregoing considerations that if the commissioner, who takes on oath of office and has been called an official by this court in the case cited, supra, and if the school-teacher, whose relation is contractual, can, by virtue of their employment by the public under conditions and upon terms fixed by law, have their compensation lawfully reduced, it must follow that the relator, appointed by authority, required to take an oath, and employed to do a particular piece of work and only eligible for that work by virtue of his appointment, where his compensation is not the subject of independent contract, but is fixed by law, is entitled to the benefit of an increase in that compensation provided by law when performed after the law goes into effect.

It follows, therefore, that the order appealed from should be reversed, with $10 costs and disbursements, and the application granted, with $10 costs. All concur.