(158 App. Div. 517.)

McLAUGHLIN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.    October 3, 1913.)

MUNICIPAL CORPORATIONS (§ 214*). — EMPLOYÉS — POWER TO EMPLOY — SUR-
    VEYOR.

    The ordinance of New York authorizing borough presidents to employ
    surveyors to make surveys and damage maps and assessment lists of
    assessable property owners for street openings or other improvements
    does not authorize the employment of a surveyor to make a map of an
    assessment district for the construction of a sewage disposal plant, since
    that work is by authority of Greater New York Charter (Laws 1901, c.
    466) §§ 942–954, imposed upon the board of assessors.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
    582–588; Dec. Dig. § 214.*]

Appeal from Trial Term, Queens County.

Action by Adelaide M. McLaughlin against the City of New York.
Judgment for the defendant, and plaintiff appeals.    Affirmed.

The following is the opinion of Kapper, J., at the Trial Term:

    At the close of the trial, the court, being of the opinion that the facts were
undisputed, ruled that the cause should not be submitted to the jury, but
that judgment would be directed for the plaintiff or the defendant, after con-
sideration, as the law of the case required.    To this procedure no objection
was interposed.

    The action is to cover $74,707.85 for services performed by one Sylvester
H. McLaughlin, a city surveyor, who claims to have been employed by the
borough president of the borough of Queens to make maps and lists of owners
of property of a district or area of assessment alleged to have been adopted
by the board of estimate and apportionment of the city of New York for the
purposes of providing for the payment of the construction of a city sewage
disposal plant at Jamaica, in the borough of Queens.    The claim was assigned
to the plaintiff's testator in his lifetime.    The cost of constructing the dis-
posal plant was $143,799.75.    The amount for which the plaintiff sues is
based upon rates or charges said to be fixed by an ordinance of the board
of aldermen of the city which purports to authorize the employment of city
surveyors by borough presidents to make surveys and furnish copies of dam-
age maps and assessment lists of assessable property owners "for street open-
ings or other improvements."    The specified rates are three cents per linear
foot of map front for a first copy, and two cents per linear foot for each ad-
ditional copy.    The plaintiff claims that Sylvester H. McLaughlin furnished
three sets of maps of the said district or area of assessment together with
the lists of the owners of property whom it was proposed to assess for this
sewage disposal plant, and that his services upon the basis of the rates fixed
by the ordinance amount to $116,000, from which sum, by agreement between
the surveyor and the borough president, a reduction of about $42,000 was
made in the claim, leaving due the sum now sued for, as before stated.

    The case, as presented, bristles with propositions of law; but, as I view
the controversy, it may be narrowed to the single question of whether or not
the borough president was authorized by law to employ a city surveyor under
and pursuant to the ordinance in question for the purpose of making maps
of a district or area of assessment to pay for the construction of a sewage
disposal plant.    To determine this question it is not necessary to pass upon
the validity of the ordinance referred to, nor the borough president's power
to employ a surveyor for the purposes mentioned in the ordinance.    The ordi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nance does not refer specifically to the employment of a surveyor to make maps for sewer improvements, but does set out at length and in great detail the various kinds of surveying and mapping for which a city surveyor might be employed by a borough president, none of which, in my opinion, applies to sewer work. If there were no other and recognized authority or means for the making of maps of an assessment district for sewer work to be found in the charter (were such maps deemed to be necessary), it might be that the words in the ordinance "for street openings or other improvements" could be held to include sewer work. The ordinance may be passed by as valid, and likewise the authority of the borough president to employ a surveyor for the purposes defined in the ordinance might, too, be sustained. The case of People ex rel. Crane v. Ahearn, 125 App. Div. 795, 110 N. Y. Supp. 306, may be regarded as sanctioning the employment of a city surveyor for the purposes mentioned in the ordinance. The employment in the Crane Case was in a street opening improvement, and such an employment probably finds support in section 448 of the Greater New York Charter, where the borough president may be looked to by a street opening commission to furnish surveys, diagrams, or other information to enable the commissioners to perform their duties. Similar provisions may be found in section 979 of the charter. Nor can any basis for the employment be found in the alleged adoption by the board of estimate of the "area of assessment." The only resolution of that board in any manner affecting this particular local improvement was one adopting a map as a "drainage map" of territory to be so improved, but nothing that the board of estimate did can be said to have fixed an area or district of assessment to pay for the improvement.

What the borough president has attempted to do here is to extend the power which the ordinance gave him to employ a city surveyor in the specific instances mentioned therein to the case of mapping an assessment district which does not come within his jurisdiction at all, but is lodged by the charter in another municipal body, namely, the board of assessors, with the most plenary powers called for by the requirements of the case.

A reading of title 2 of chapter 17 of the Greater New York Charter convinces me that the work which the borough president intended to authorize here was work that devolved upon the board of assessors. The assessment to be levied to meet the cost of constructing the sewage disposal plant involved in this case was one wholly within the jurisdiction of the board of assessors. It was an assessment for a local improvement "which may be lawfully confirmed in any other manner than by a court of record" (Charter, § 942), and that board is charged with the duty of making all assessments, other than those required by law to be confirmed by a court of record, for local improvements for which assessments may be legally imposed in any part of the city of New York (Id. § 943).

The duty of the borough president with regard to this work was only to "certify to the board of assessors the total amount of all the expenses which shall have been actually incurred by the city of New York on account thereof," after which the board of assessors is commanded to "assess upon the property benefited, in the manner authorized by law," the aggregate amount of the cost of the improvement (Id. § 946). To levy this assessment the charter (section 949) gives to the board of assessors the most explisit directions for procedure, viz.: "In all the cases the assessors shall describe in the assessment the property assessed by the same ward or block numbers, or other designations as shall be used to designate the said property on the tax books of the city of New York. They shall also describe the houses and lots assessed by their street numbers, if any. The assessors shall also state the name of the owner or owners and occupant or occupants, if they be known to the assessors, and it shall be their duty to ascertain, as far as may be, by inquiry from the commissioners of taxes and assessments or others, such ownership and occupation, and such commissioners shall afford the requisite information" (Id. § 949).

Now, what was the work the surveyor did in this case? The testimony is undisputed, and nothing is left to inference. It is explicit that his maps were

"copies of the tax maps now in the tax department" of the city, that he made up the number of linear feet by an "addition of the map frontage," and that he made up his lists by copying the names of the parties owning the property and the amount thereof facing on any one street from the tax books and maps in the department of taxes of the city, and nothing that I can find from the testimony indicates that a single thing was done by this surveyor which section 949 of the charter did not call upon the board of assessors of the city of New York to do in this particular instance.

Of course, if the plaintiff is to prevail, this $74,000 claim for making maps of an area of assessment of private property to pay for a $140,000 improvement will be the subject of a tax upon that property, with the imposing, levying, or collecting of which the borough president's duties and functions are wholly foreign. There is no doubt but that the authority to require property specially benefited to bear the expense of local improvements is a branch of the taxing power or included within it. And this power has uniformly been vested exclusively in the board of assessors of the city of New York in cases of local improvements for sewers, not alone as to the area and property benefited, but also the proportion of benefits as to each property owner. As was said in People ex rel. Davidson v. Gilon, 126 N. Y. at page 157, 27 N. E. 285: "Such board is, by the charter, made the exclusive judge * * * of the property supposed to be benefited, and the extent of such benefit."

In Matter of Cruger, 84 N. Y. 619, 621, the court, in disposing of an objection that an area of assessment for benefit was too small, said that: "The law committed that question to the assessors and the board of revision. They acted upon such knowledge and observation as they had, and such proof as was presented. They had a discretion to exercise in this respect which we cannot review. The petitioner is in substance asking us to substitute the opinion and judgment of his witnesses as to the area of benefit, for that of the officers to whom it was committed by the statute."

So, too, in the Matter of Munn, 165 N. Y. at page 155, 58 N. E. 883, the court, in determining a claim of disproportionate assessment for a sewer improvement, say: "Inasmuch as the assessors and the board of revision had the exclusive power to determine what property was benefited and the proportion of benefits as to each property owner, it seems to be quite clear that the court had no power in this case to set aside the assessment. This limitation on the power of the courts has no reference to condemnation or street opening proceedings or other proceedings under special statutes that are subject to confirmation by the courts."

The cases cited arose under the Consolidation Act of the City of New York (L. 1882, c. 410), but the Greater New York Charter is the same in terms.

It is clear, therefore, that both by the charter, and under the authorities construing it, the board of assessors was the sole municipal body or board or officer authorized to obtain information by way of maps or surveys or copies of the tax lists or whatever else was necessary to determine what property should be assessed for the improvement in question, and this express devolution of power eliminates any implied power that might have been extracted from the use of the words "or other improvements," as set forth in the ordinance authorizing the borough president to employ a surveyor to make maps and surveys for the purposes therein stated.

The claim here in suit was presented to Mr. Justice Stapleton at Special Term on an application for a mandamus to compel its payments. That application was denied (70 Misc. Rep. 6, 127 N. Y. Supp. 1057). Although the decision of the learned justice was placed upon the ground that mandamus would not lie for the reason that there had been no audit of the claim, he gave expression to views with regard to the power of the borough president and the board of assessors similar to those herein entertained and which I now follow.

Judgment is directed for the defendant dismissing the plaintiff's complaint upon the merits, with costs.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and PUTNAM, JJ.

L. Laflin Kellogg, of New York City, for appellant.

Archibald R. Watson, Corp. Counsel, of New York City, R. P. Chittenden, of Rowayton, Conn., and Francis Martin and John F. Collins, Asst. Corp. Counsels, both of New York City, for appellee.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Mr. Justice Kapper at Trial Term.

---

(158 App. Div. 528.)

PHELPS et al. v. McQUADE.

(Supreme Court, Appellate Division, First Department. October 31, 1913.)

1. SALES (§ 234*)—BONA FIDE PURCHASERS OF STOLEN GOODS.

In a case of common-law larceny the thief acquires no title, and a bona fide purchaser from him obtains none which is good against the owner.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 645, 657–677, 679, 680; Dec. Dig. § 234.*]

2. SALES (§ 234*)—COMMON-LAW LARCENY—BONA FIDE PURCHASER.

Where defendant's vendor represented himself as another person, and thus obtained goods upon credit, plaintiffs intending, however, to sell the goods to defendant's vendor and pass title to him, he was not guilty of common-law larceny, but obtained such title that a bona fide purchaser from him might hold the property as against plaintiffs.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 645, 657–677, 679, 680; Dec. Dig. § 234.*]

3. SALES (§ 234*)—PROPERTY OBTAINED BY FRAUD—BONA FIDE PURCHASER.

A bona fide purchaser for value without notice will be protected even where his vendor obtained the goods by fraud, if the fraudulent act is a felony by statute only and would not have been a felony at common law.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 645, 657–677, 679, 680; Dec. Dig. § 234.*]

Appeal from Trial Term, New York County.

Action by William R. Phelps and another against Dennis Charles McQuade. From a judgment for plaintiffs, defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Bartley J. Wright, of New York City, for appellant.

Monteith Gilpin, of New York City (Hartwell Cabell, of New York City, of counsel), for respondents.

CLARKE, J. The plaintiffs were jewelers. On February 15, 1911, one Walter C. Gwynne falsely represented himself to the plaintiffs to be Baldwin J. Gwynne, a resident of the Lincoln Hotel in Columbus, Ohio, with a satisfactory rating in the reports of the Dun and Bradstreet Mercantile Agencies, and, later on the same day, the manager of Jules S. Bache & Co., bankers, identified the said Walter C. Gwynne to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes