GEORGE W. WALTERS, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

CIVIL SERVICE — NEW YORK CITY — REDUCTION OF SALARIES AUTHORIZED BY CHAPTER 436, LAWS OF 1902 — REGULATION WITH RESPECT TO NOTICE AND HEARING OF EMPLOYEES REMOVED FROM OFFICE INAPPLICABLE TO AN EXTRAORDINARY SITUATION. Chapter 436 of the Laws of 1902 providing, among other things, that the board of estimate and apportionment of the city of New York within twenty-two days should revise the budget, and that during the same period salaries in any of the offices, departments, bureaus, boards or commissions might be changed to meet

the budget, in view of the urgent and unprecedented situation which the legislature had to meet, must be regarded as a valid emergency act, passed under the stress of existing circumstances, and during the few days it was to be in force was intended to suspend or render inactive and inapplicable all statutes inconsistent therewith, one of which was section 1543 of the charter providing in the case of the removal of a regular clerk, etc., for a hearing on notice and in the case of veterans a trial. The action of the board, therefore, during the prescribed period in reducing the salary of a clerk in the finance department, who was a veteran and one of a vast number of employees in various departments whose salaries were reduced, which reduction according to the rules of the civil service commission lowered his grade without giving him an opportunity to be heard and without entering in the records of the department the true grounds therefor, was not a removal within the meaning of the civil service section of the charter or any civil service statute for the state at large; it was a change on a vast scale required by the exigencies of state and the financial condition of the city, and such changes do not admit of an opportunity to be heard and a personal explanation by every one of the great number of incumbents affected; the clerk, therefore, cannot recover from the municipality the amount his salary was reduced.

*Walters* v. *City of New York*, 119 App. Div. 464, affirmed.

(Argued December 4, 1907; decided December 20, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 3, 1907, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury and granting a new trial.

This action was brought to recover the sum of $900, or the difference for three years between the salary which the plaintiff claimed he was entitled to receive as clerk in one of the departments of the defendant and that which he was actually paid.

The trial court found the following facts in substance : On the 30th of April, 1902, the plaintiff was a regular clerk in the department of finance, borough of Brooklyn, holding his position under the civil service rules then in force by which he was assigned to the fifth grade at an annual salary of $1,800. He was also an honorably discharged soldier of the Union army and had served as a volunteer fireman during the term required by law to qualify him for preference in the

civil service.   On the day last named the board of estimate and apportionment of the city of New York "under the power conferred by the amendment to section ten of chapter 378 of the Laws of 1897, as amended by chapter 466 of the Laws of 1901, reduced the salary of the plaintiff from $1,800 per annum to $1,500 per annum, and the plaintiff had no opportunity of making an explanation, and the true grounds of such reduction were not forthwith entered upon the records of the department, nor was a copy filed with the municipal civil service commission; that the plaintiff protested against such reduction and has not waived his rights in any particular."

After finding other facts, which were merely formal, the court found as conclusions of law that such reduction "was in legal effect a removal from the fifth grade, a higher grade in salary, to the fourth grade, a lower grade in salary; that it was the legal duty of the board of estimate and apportionment to have given the plaintiff a hearing and an opportunity to explain before he · was removed, and said reduction and removal were in violation of section 1543 of the Greater New York charter; that the reduction and removal of the plaintiff, a veteran and volunteer fireman, without cause, was in violation of section 127 of the Greater New York charter; that there has been no waiver of the plaintiff's rights to recover in this action, and by reason of the facts heretofore stated the plaintiff is entitled to judgment against the defendant for the sum of $900, being $300 a year from the first day of May, 1902, down to the date of the commencement of this action, May 5th, 1905, and with average interest thereon from May 1st, 1902."

The judgment directed and entered accordingly was reversed by the Appellate Division, and thereupon the plaintiff appealed to this court, stipulating for final judgment in case the order of reversal should be affirmed.

*R. Percy Chittenden* for appellant.   The board of estimate and apportionment under authority to "fix salaries" con-

ferred by amendment to section 10 of the charter under
chapter 436 of the Laws of 1902, were without power to
reduce the plaintiff's salary below the limit of the fifth grade,
established by the civil service rule 37, for his position, and
thereby work a change in his grade, which act was forbidden
by the Greater New York charter (§ 1543) unless the reasons
therefor were given and an opportunity afforded the plaintiff
to make an explanation, which was not done in this case.
This reduction in rank and pay was "in legal effect" a
removal in violation of the charter. (*People ex rel. Shepard*
v. *Oakley*, 181 N. Y. 399; *People ex rel. Shepard* v. *Ellison*,
188 N. Y. 614; *People ex rel. Callahan* v. *Board of Educa-
tion*, 174 N. Y. 169; *Butler* v. *White*, 83 Fed. Rep. 578;
171 U. S. 366; *Matter of Lester*, 21 Hun, 13; *People* v.
*Pinkney*, 32 N. Y. 382; *Costello* v. *Mayor, etc.*, 63 N. Y.
51; *Whipple* v. *Christian*, 80 N. Y. 527; *People ex rel.
Sweet* v. *Lyman*, 157 N. Y. 475; *Lyon* v. *M. R. Co.*, 142
N. Y. 303.) The plaintiff's "status" was changed in viola-
tion of section 124 of the Greater New York charter and the
Civil Service Law (§§ 20, 21), he being a veteran of the Civil
War and a volunteer fireman and entitled to preference in
"promotion," and protection from "removal" thereunder.
(*O'Hara* v. *City of New York*, 46 App. Div. 518; 167 N. Y.
567.) The reduction of plaintiff's salary below the limit of
his grade was an evasion of the spirit and letter of the Con-
stitution and the Civil Service Law and rules passed pursuant
thereto. (Const. of N. Y. art. 5, § 9; *Chittenden* v. *Wurster*,
152 N. Y. 362.)

*Francis K. Pendleton, Corporation Counsel* (*Theodore
Connoly* and *William B. Crowell* of counsel), for respondent.
Section 1618 of the charter does not affect the present case.
(*Mongeon* v. *People*, 55 N. Y. 613; *People ex rel. Ellett* v.
*O'Grady*, 46 App. Div. 213; *People* v. *Cleary*, 13 Misc. Rep.
546; *People ex rel. Crabtree* v. *Scully*, 24 Misc. Rep. 412;
*Lang* v. *Lutz*, 180 N. Y. 254; *Newton* v. *Comrs.*, 100 U. S.
548; *Crenshaw* v. *U. S.*, 134 U. S. 99; *I. C. R. R. Co.* v.

*Illinois*, 146 U. S. 387; *M. L. Ins. Co.* v. *Spratley*, 172 U. S. 621; *Taylor* v. *Beckham*, 178 U. S. 548.) A reduction of salary or dismissal by reason of economy or for the reorganization of the city's civil service without an opportunity to explain are not prohibited by section 1543 of the charter. (*People ex rel. Steers* v. *Dept. of Health*, 86 App. Div. 523; *People ex rel. Munday* v. *Fire Comrs.*, 72 N. Y. 445; *Phillips* v. *Mayor, etc.*, 88 N. Y. 245; *People ex rel. Corrigan* v. *Wurster*, 149 N. Y. 215; *Matter of Breckenridge*, 160 N. Y. 103; *People ex rel. Chappel* v. *Lindenthal*, 173 N. Y. 524; *People ex rel. Wardrop* v. *Adams*, 51 Hun, 583; *People ex rel. Maloney* v. *Waring*, 7 App. Div. 204; *People ex rel. Traphagen* v. *King*, 13 App. Div. 400; *Matter of Kelly*, 42 App. Div. 283; *People ex rel. Harbough* v. *Scannell*, 48 App. Div. 445; *People ex rel. Carll* v. *York*, 53 App. Div. 429; *People ex rel. Nason* v. *Feitner*, 58 App. Div. 594.) A reduction in a salary is not a removal within the meaning of section 1543 of the charter or the Veteran Law. (*People ex rel. Havron* v. *Dalton*, 85 App. Div. 111; *Monroe* v. *Mayor*, 28 Hun, 258; *People ex rel. Short* v. *Fire Comrs.*, 47 Hun, 528.)

VANN, J.   By section 1543 of the revised charter the heads of all departments and all borough presidents are authorized to appoint and remove all clerks, officers, employees and subordinates in their respective departments, except as otherwise specially provided by law, "but," as the section continues, "no regular clerk or head of a bureau or person holding a position in the classified municipal civil service subject to competitive examination, shall be removed until he has been allowed an opportunity of making an explanation; and in every case of a removal, the true grounds thereof shall be forthwith entered upon the records of the department or board or borough president, and a copy filed with the municipal civil service. In case of removal, a statement showing the reason therefor shall be filed in the department." The number of officers, clerks, employees, etc., as well as their

duties, were to be such as the heads of the respective departments and borough presidents should designate and approve, subject to the provisions of law and to the ordinances of the board of aldermen. Salaries and wages, according to the same section, were to be fixed by the board of aldermen upon the recommendation of the board of estimate and apportionment.

Section 56 at first provided that all salaries as they were on the first of January, 1902, should continue in force until fixed by the board of aldermen, but by chapter 435 of the Laws of 1902, passed on the eighth of April of that year, it was so amended as to add a significant exception in these words, " except as may be otherwise determined by the board of estimate and apportionment prior to the first day of May in the year 1902 under the provisions of section ten hereof." Section ten, as later on will more fully appear, relates generally to the expenses of the city, and confers express authority on said board to fix salaries during a limited period in order to bring the expenses within the limits of the budget.

" Section Five," not of the charter, but of the act revising it (p. 657), provided that although the charter should take effect generally on the first of January, 1902, certain portions thereof should take effect at the date of its passage, April 22nd, 1901, and that the board of estimate and apportionment as then constituted, and the municipal assembly as then existing, should during the year 1901 make appropriations for the year 1902, " so far as practicable."

Section ten was so amended by chapter 436 of the Laws of 1902 as to provide that " between January first and May first in the year 1902, the board of estimate and apportionment shall have power from time to time to alter, modify and amend the budget for the year 1902 ; to change the titles, terms and conditions of appropriations contained therein ; to add new appropriations and abolish any that may be found unnecessary ; and also upon the recommendation of the mayor or any borough president or head of any department, bureau, office, board or commission of the city of New York, or of any

of the counties embraced therein, to fix salaries in any of said offices, departments, bureaus, boards or commissions; and in furtherance of these purposes or any of them shall have the power, if additional funds be required, to direct the comptroller to issue special revenue bonds redeemable from the tax levy of the year 1903."

This act, as well as chapter 435, was passed on the eighth of April, 1902, and as both acts took effect immediately, but twenty-two days were left for action under either or both thereof.

On the 30th of April, 1902, the board of estimate and apportionment adopted a resolution fixing the salaries of all the officers, clerks and employees in the department of finance, with one exception, at the rate recommended by the comptroller in a statement annexed to the resolution. Said statement contained a large number of names of officers, clerks and employees, with the existing and proposed titles of their respective positions and the amount of salary fixed for each. Among others was the name of the plaintiff with the title, both present and proposed, of clerk, and a salary of $1,500 was written opposite his name. His salary had previously been $1,800 and the effect of reducing it to $1,500, according to the rules of the civil service commission, also reduced his grade from the fifth class to the fourth, although if his salary had been reduced to $1,501 his grade would not have been changed. Upon the theory, supported by authority, that ordinarily a change from a higher to a lower grade is regarded as a virtual removal from a higher position to a lower, the trial court held that the plaintiff had been unlawfully removed from the position held by him prior to the adoption of said resolution, although he continued thereafter to perform the same duties that he had before. (*People ex rel. Callahan* v. *Board of Education of N. Y.*, 174 N. Y. 169, 176.)

The Appellate Division, in reversing the trial court, held that even if the action complained of was a removal it must be regarded as valid until set aside by some direct proceeding, but one of the justices concurred in the result only on the

ground that the mere reduction in salary was not a removal of the plaintiff from office, because he was left in his place and continued to perform the duties thereof, the same as before. ( *Walters* v. *City of New York*, 119 App. Div. 464, 471.)

Assuming that the action of the board of estimate and apportionment was in effect a removal of the plaintiff, still we are of the opinion that under the charter as it stood when that action was taken and the complicated and peculiar circumstances existing when the statute was passed, such a removal was valid, because the legislature did not intend that the civil service section of the charter, or the civil service statutes for the state at large, should apply under those circumstances. What was the situation when the plaintiff contends that he was removed? We can draw the picture only in outline, for the entire scene would require an abstract of the charter and a summary of the conditions existing in all the departments.

The legislature was never confronted with a more serious problem than when it united two great cities, one small city, two entire counties and part of a third, into one municipality and provided for the government thereof by a single statute. (Charter of the City of New York, L. 1897, ch. 378.) The subject was of the highest importance on account of the vast number of people affected, difficult on account of the complicated system of government through city, boroughs, counties and wards, each with certain autonomous powers for local purposes, but all blended into an imperial whole for general purposes, and intricate on account of the necessary adjustment of the public debts and assets of the different municipalities, the adaptation of taxation to the new order of things and the creation of a vast system of administration. Eighteen administrative departments were organized with broad powers and duties, directly affecting the public welfare, and each requiring a multitude of officers and employees. Of course, it was impossible for human wisdom to anticipate all the emergencies that would arise, or to provide in advance for all the contingencies which experience has since developed Accordingly we find that during the four years next ensuing

sixty-eight independent statutes were found necessary to supply omissions and correct errors, while the courts were constantly called upon to settle difficulties and resolve doubts.

In 1901 the necessity for a thorough revision had become so great that under the form of an amendment, substantially a new charter was enacted, by which the powers and duties of all the departments were changed, and in many cases the change involved a reorganization. (L. 1901, ch. 466.) The municipal assembly was abolished and a board of aldermen substituted with great increase of legislative power. Old boards were done away with and new boards created with enlarged functions and wider jurisdiction. New trusts were committed to the presidents of the various boroughs, with new methods of administration and large additional powers. The changes were general, in many instances vital and too numerous to mention even in a casual way. It is sufficient for our present purpose to say that the revised charter was in substance a new creation, involving almost as many difficulties as the old and imposing upon the courts the duty of discovering the intention when not expressly stated but necessarily involved.

An attempt was made to relieve the confusion, so far as it could be foreseen, which necessarily would result from tearing down and building up municipal government on so grand a scale. Authority was conferred to make the budget for 1902 partly in one year and partly in another, at first and tentatively during 1901, but afterward and finally during 1902, with power " to alter, modify and amend." Efficient administration with due regard to economy required that numerous changes should be made in the duties to be performed by and the salaries to be paid to those occupying positions in the various departments, many thousands in number. Authority to do this was expressly conferred by chapter 436, which the plaintiff during the trial admitted of record was constitutional. To remodel and reclassify more than twenty thousand offices and positions and so fix the salaries as to meet the new situation, was a prodigious task,

but the board of estimate and apportionment had much more than that to do in order to prepare an amended budget, still they had but twenty-two days, including Sundays, in which to do it all.   It may be assumed that the budget had been made up in part when chapter 436 was passed, but it must also be assumed that the partial preparation thereof disclosed the necessity of changing salaries, for the final word of the legislature, uttered in the form of an amendment to section ten, related to the subject of salaries and nothing else.   The situation was so complicated and extraordinary that the legislature deemed it necessary to crowd into a few days an amount of work that might well have taken many months, yet, if the position of the plaintiff is sound, not a salary could be lowered, if it involved a change of grade, without giving the incumbent an opportunity to explain, recording the true ground and filing a statement of the reasons.   If his theory is correct, within less than twenty working days the board was not only to complete the budget, assuming that part of the work had already been done, but also to give a hearing on notice and in the case of veterans, a trial, in every case where a change of salary lowered the grade.   Did the legislature intend that this should be done?   How could it be done in the limited time allowed for performance of the many, varied and vital duties of the board?   Of what use would it be if it were done?   Could a personal explanation supply money to pay salaries?   The changes were to be made by fiscal officers for fiscal purposes.   Broad general reasons connected with efficiency and economy were to guide their action.   Nothing personal to the plaintiff or to any one in a like situation could properly be taken into account.   Under these circumstances, what effective explanation could he have made if he had been given the opportunity?   The changes did not affect him alone but many others as well.   If one had the right to explain, all had the same right and this would involve not only a useless form, but a physical impossibility.

This reasoning leads us to the conclusion that the legislature in the nature of things could not have intended that the per-

sonal right of explanation should apply to impersonal removals, made not on account of any alleged fault or omission of duty, or through caprice, but for governmental reasons affecting a great number of incumbents. No empty ceremony could have been intended by the legislators in view of the urgent situation and the unprecedented facts with which they had to deal. They intended the possible, not the impossible. When they commanded that the budget should be revised within twenty-two days and provided that during the same brief period salaries might be changed to meet the budget, they did not intend that section 1543 should apply, because it would do no good and they knew that compliance therewith would be impossible. If we ascribe a reasonable intention to the legislature, which is always a pleasure as well as a duty, they necessarily intended that a removal such as the plaintiff was subjected to, was not a removal within the meaning of section 1543 or any civil service statute. Removals on a vast scale required by exigencies of state do not admit of an opportunity to be heard, and a personal explanation by every one of the great number of incumbents affected. The board was given the temporary but absolute power to make any changes it saw fit, provided it acted in good faith. There is no claim of bad faith or furtive motives, which the courts are swift to frown upon, for it seems to be conceded that salaries were reduced only for economic reasons and because, in the opinion of the members of the board, the financial condition of the city required such action.

We think that chapter 436 of the Laws of 1902 was a valid emergency act, passed under the stress of exacting circumstances and that during the few days it was to be in force it was intended to suspend or render inactive and inapplicable all statutes inconsistent therewith.

The order of the Appellate Division should be affirmed and judgment absolute rendered against the plaintiff on the stipulation, with costs in all courts.

CULLEN, Ch. J., O'BRIEN, EDWARD T. BARTLETT, HAIGHT, HISCOCK and CHASE, JJ., concur.

Ordered accordingly.