(160 App. Div. 261)
O'MALLEY v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 23, 1914.)

1. MUNICIPAL CORPORATIONS (§ 217*)—EMPLOYÉS—CIVIL SERVICE LAW.

Civil Service Law (Laws 1899, c. 370) § 15, provides that promotions shall be based on merit and competitive examinations, and no person shall be promoted without examination. Plaintiff, in 1900, took a civil service examination, and was promoted to fifth grade clerk in the supplies department in the Board of Education, with a salary of $2,000 per annum. Thereafter his salary was validly reduced to $1,500 and after the reduction, the Civil Service Commission changed the classification of such clerks so as to make clerks entitled to $2,000 of a higher grade than the fifth. *Held*, that the resolution of the Civil Service Commission that any person in competitive service, who shall have passed an examination for promotion covering a higher grade of compensation than that of the position he now holds, shall be eligible for promotion without further examination did not abrogate the Civil Service Law, and entitle plaintiff to an increased compensation prescribed by the board of aldermen, where such compensation would have taken him out of the grade of which he was a member.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 576, 577, 579, 580; Dec. Dig. § 217.*]

2. MUNICIPAL CORPORATIONS (§ 217*)—CIVIL SERVICE COMMISSION—POWER.

The Civil Service Commission may change the classification of competitive positions so as to make a position of a given grade entitle the holder to a less compensation than had been the case before compensation of such employés of the city of New York had been reduced, under Laws of 1902, on account of a financial emergency.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 576, 577, 579, 580; Dec. Dig. § 217.*]

3. MUNICIPAL CORPORATIONS (§ 217*) — EMPLOYÉS — CIVIL SERVICE — "PROMOTION."

The fixation of a salary at an amount appropriate to a higher grade than a clerk in the classified civil service was entitled to because of his present rank constitutes a promotion requiring an examination under the direct provision of Civil Service Law (Laws 1899, c. 370) § 15.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 576, 577, 579, 580; Dec. Dig. § 217.*]

For other definitions, see Words and Phrases, vol. 6, p. 5683; vol. 8, p. 7767.]

Appeal from Trial Term, New York County.

Action by Francis J. O'Malley against the Board of Education of the City of New York. From a judgment entered upon direction of verdict for defendant and an order denying his motion for new trial, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John E. O'Brien, of New York City, for appellant.

Archibald R. Watson, Corp. Counsel, of New York City (Charles McIntyre, of New York City, of counsel, and Terence Farley, of New York City, on the brief), for respondent.

CLARKE, J. The plaintiff is a clerk in the supplies department of the Board of Education. He was first appointed in 1892 in Brook-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lyn, where he remained until the consolidation of the Greater City on January 1, 1898. He took a civil service examination May 11, 1900, with a rating of 98.80 per cent., and was promoted to the position of a fifth grade clerk, with a salary of $2,000 on June 5, 1900.

The Civil Service rules in effect at the time the eligible lists were established in 1900 provided as follows:

"Positions in the competitive class are graded according to the fixed limit of compensation as follows: Group 1. For all positions included in Schedule B. * * * Fourth grade, senior clerks, annual compensation of more that $1,000 but not more than $1,500. Fifth grade, senior clerks, annual compensation of more than $1,500 but not more than $2,000."

The plaintiff testified:

"Prior to May 1, 1902, I received a salary of $2,000 per annum; after the Sweep Act, May 1, 1902, I received a salary of $1,500 per annum."

He refers to chapter 436 of the Laws of 1902, giving power to the board of estimate and apportionment, for a limited period, to alter all salaries excepting those of elective officers. This power was in force for about 22 days upon the going into effect of the revised charter. It was passed to meet the emergency in the city's finances at that time. It was completely justified and upheld in Walters v. City of New York, 190 N. Y. 375, 83 N. E. 48. In that case a regular clerk in the department of finance, holding a position under the civil service rules then in force, by which he was assigned to the fifth grade at an annual salary of $1,800, who was also an honorably discharged soldier of the Union Army, had his salary reduced by the board of estimate and apportionment from $1,800 to $1,500 per annum. He sued for the difference in salary, upon the ground that the effect of such reduction was to remove him from his office, in violation of section 1543 of the Charter (Laws 1901, c. 466), without giving him an opportunity to be heard.

Vann, J., speaking of the action of the trial court in giving a judgment for the plaintiff, said:

"Upon the theory, supported by authority, that ordinarily a change from a higher to a lower grade is regarded as a virtual removal from a higher position to a lower, the trial court held that the plaintiff had been unlawfully removed from the position held by him prior to the adoption of said resolution, although he continued thereafter to perform the same duties that he had before. People ex rel. Callahan v. Board of Education of N. Y., 174 N. Y. 169, 176 [66 N. E. 674]. * * * Assuming that the action of the board of estimate and apportionment was in effect a removal of the plaintiff, still we are of the opinion that, under the charter as it stood when that action was taken and the complicated and peculiar circumstances existing when the statute was passed, such a removal was valid, because the Legislature did not intend that the civil service section of the charter, or the civil service statutes for the state at large, should apply under those circumstances. * * * If we ascribe a reasonable intention to the Legislature, which is always a pleasure as well as a duty, they necessarily intended that a removal such as the plaintiff was subjected to, was not a removal within the meaning of section 1543, or any civil service statute. * * * We think that chapter 436 of the Laws of 1902, was a valid emergency act, passed under the stress of exacting circumstances, and that during the few days that it was to be in force it was intended to suspend or render inactive and inapplicable all statutes inconsistent therewith."

By resolution of the board of estimate and apportionment on April 30, 1902, plaintiff's salary as clerk was fixed at $1,500, to take effect forthwith. On February 13, 1903, the board of estimate and apportionment recommended to the board of aldermen and the board of aldermen adopted, on March 3, 1903, approved March 9, a resolution fixing the salary of plaintiff at $1,650.

On December 4, 1903, the Civil Service Commission adopted a classification which remained in effect until September 20, 1907. It provides, inter alia, as follows:

"The Competitive Class.

"Part II. The Clerical Service.

"Group 1. Clerks. * * * The positions under the above title are graded according to the amount of annual compensation, or its equivalent, attaching to each as follows [the figures being for the minimum]: * * * Grade 5, $1,500. Grade 6, $1,800. Grade 7, $2,100."

On the 14th day of March, 1905, upon the request of the Board of Education upon the recommendation of the board of estimate and apportionment, the board of aldermen passed a resolution, approved on the 21st, fixing the salary of the position of clerk in the department of education at the rate of $1,950 per annum.

The witness testified that he received from the Board of Education $1,650 per annum from March 21, 1905, down to June 10, 1908, and since that time at the rate of $1,800 per annum.

On September 20, 1907, the Municipal Civil Service Commission adopted a classification of grades which remained in effect until April 1, 1911. The claim in this case was filed in April, 1911. The classification is as follows:

"The Competitive Class.

"Clerical Service.

"Group 1.—Clerks. * * * The positions under the above title are graded according to the annual amount of compensation, or its equivalent, attaching to each as follows: * * * Grade 3, $1,200 annually. Grade 4, $1,800 annually. Grade 5, $2,400 annually.

On June 10, 1908, the Board of Education adopted the following resolution:

"That the following named employés be, and they are hereby, promoted as indicated, the grades specified being those indicated, the grades specified being those which appear in the schedule of salaries and grades adopted by the board of estimate and apportionment on December 13, 1907, namely: Clerk: * * * Grade 3B, $1,500; grade 3C, $1,650; grade 4, $1,800; grade 4A, $1,950. * * *

"Bureau of Supplies.

"Frank J. O'Malley, clerk, from grade 3C to grade 4."

At that time the Board of Education was still exercising the power of fixing salaries for its employés outside of the teaching staff, as well as within it, under a claim of right. It was not until April, 1911, that the Court of Appeals finally decided, in Hogan v. Board of Education, 200 N. Y. 370, 93 N. E. 951, that such power was exclusively lodged in the board of aldermen.

This claim was made few days after the decision in the Hogan Case, and this suit was brought to recover the difference between the salary of $1,950 claimed to have been fixed by the board of aldermen on March 21, 1905, and $1,650 per annum from said date down to June 10, 1908, and $1,800 from June 10, 1908, to the time of the commencement of this action, being $1,388, beside interest.

[1-3] The city defends upon the contention that plaintiff's salary having been fixed by the board of aldermen on February 13, 1903, at $1,650 he was, upon the 21st day of March, 1905, when the resolution was adopted purporting to fix his salary at $1,950, in the fifth grade, which covered salaries from $1,500 to $1,800; that the fixing at $1,950 would have carried him into the sixth grade, which was between $1,800 and $2,100, and therefore was a promotion; and, while it is conceded that the Board of Aldermen had the power to fix the salary, yet an increase which took him from a lower to a higher grade was a promotion and, to avail himself of said increase, he was obliged to pass a competitive examination for promotion to that next higher grade. This, it is conceded, he never did. From September 20, 1907, until the time of the filing of this claim the grades were, third from $1,200 to $1,800, which included $1,650 and fourth from $1,800 to $2,400, which, of course, would include the $1,950, so that the same argument is advanced under that classification for the balance of the term for which he sues. The plaintiff, conceding that he has passed no competitive examination since 1900, claims, however, that he did then pass an examination for promotion to the grade calling for the payment of $2,000, and was appointed, and, although the exigencies of the city required and authorized the Legislature to pass a law permitting the board of estimate and apportionment to reduce salaries, and under that law his salary was reduced to $1,500, which would carry him into a lower grade, that, in view of the extraordinary situation, the Civil Service Commission, recognizing the rights of people in the clasified service, adopted in their rules and classifications as prescribed and established December 4, 1903, rule 15, "Promotion" of which subdivision 12 is as follows:

"Any person in the competitive service who shall have passed an examination either for appointment or promotion covering in its scope a higher grade or compensation than that of the position he now holds, shall, if not otherwise disqualified, be eligible for promotion or advancement to such higher grade or compensation without further examination under this rule."

At the time of the promulgation of that rule he was receiving $1,650, but as he had passed a competitive examination, and had received a salary of $2,000, he claims that he came within the purview of that rule, and was not required to pass another examination to get into the grade for which he had once been examined and from which he had been reduced, not for personal misconduct, but by reason of the general exigencies of the city. I think the rule does not aid the plaintiff. No rule of the Municipal Civil Service Commission can repeal the positive provisions of law.

The plaintiff further contends that the Civil Service Commission had no power, by changing the classification, to exclude him from the

benefits of the resolution of the board of aldermen, fixing the salary of his position at $1,950 per annum. This means that, so far as the plaintiff is concerned, the classification in force in 1900 is still effective, because, under that alone would an increase from $1,650 to $1,950 be within the limits of the same grade, and therefore not operate as a promotion.

In Sauerbrunn v. Board of Education, 150 App. Div. 407, 135 N. Y. Supp. 85, affirmed on opinion below (208 N. Y. 550, 101 N. E. 1120), the question was as to the power of the board of aldermen to reduce compensation. After the fixation of the salary the grades were abolished and the position held by the plaintiff was left ungraded. Mr. Justice McLaughlin said:

"Once the grades were abolished, even though it be conceded that the plaintiff's position theretofore came within one of the established grades, and that his salary could not, while such grades existed, be reduced, then the resolution applied. The resolution of June 30th unquestionably reduced the plaintiff's salary from $45 to $35 a week. People ex rel. Stokes v. Tully, 108 App. Div. 345 [95 N. Y. Supp. 916, 1153]. The board of aldermen had as much power to diminish salaries as to increase them. Buckbee v. Board of Education, 115 App. Div. 366 [100 N. Y. Supp. 943], affirmed 187 N. Y. 544 [80 N. E. 1106]."

The action of the Municipal Civil Service Commission in establishing grades does not, as plaintiff claims, act as a veto upon the power of the board of aldermen to fix salaries. It is only the regulation of the condition under which the individual may receive and enjoy the salary fixed, namely, by complying with the provisions of an equally valid statute, namely, the Civil Service Law.

I am of the opinion that the proposition is unassailable; that the fixation of a salary at an amount appropriate to a higher grade than the one in which the officer is at the time constitutes a promotion and requires an examination. This is thoroughly established in People ex rel. Stokes v. Tully, 108 App. Div. 345, 95 N. Y. Supp. 916, 1153. In that case the court said:

"It remains to consider the question in the light of the Civil Service Law. If the increase of salary amounts to a promotion, then there must be compliance with that law, by taking a further competitive examination before the erstwhile incumbent becomes legally entitled to the increase. While the civil service rules merely establish a classification, and do not fix or control salaries (People ex rel. Lodholz v. Knox, 58 App. Div. 54 [69 N. Y. Supp. 602]; Powell v. City of New York, 65 App. Div. 421 [72 N. Y. Supp. 990]), every question of an increase of salary must be considered with regard to section 15 of the Civil Service Law (Laws 1899, c. 370), which requires that promotions shall be based on merit and competition, and that for the purposes of the section 'an increase in the salary or other compensation of any person holding an office or position within the scope of the rules in force hereunder beyond the limit fixed for the grade in which such office or position is classified shall be deemed a promotion.' If the relator's office or position was classified for a grade, the compensation of which was limited to $1,000, then the increase would amount to a promotion under section 15 of the Civil Service Law, and would not take effect unlesss he passed a competitive examination and otherwise complied with the legal requirements. * * * A mere increase in salary does not ipso facto constitute a promotion; it must be beyond the limit fixed for the grade."

I am of the opinion that plaintiff's salary was legally fixed at $1,500 on April 30, 1902, that it was legally increased to $1,650 March 9,

1903, because such increase did not carry plaintiff out of the grade in which he then was. That the salary of his position was legally fixed at $1,950 March 21, 1905, but that, under the classification made by the Municipal Civil Service Commission then and since in force, the provisions of the charter, and the Civil Service Law, plaintiff's right to receive said salary depended upon the passing of a competitive examination for promotion. As it is conceded that he at no time after such fixation took said examination, he established no cause of action against the Board of Education upon this trial.

The judgment, therefore, entered upon the dismisal of his complaint and the order denying a new trial, should be affirmed, with costs to the respondent. All concur.